WHITE v. CITY OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department.   March 3, 1909.)

1. PLEADING (§ 214*)—DEMURRER—ADMISSIONS BY.

The truth of the allegations of the complaint in an action against the city of Buffalo for damages for a nuisance occasioned by the periodical overflow of the Buffalo river, damaging plaintiff's land, that it is the duty of the city to abate the nuisance, and that it has full power to do so must be determined from an examination of the city charter and legislative acts, and is not admitted by a demurrer.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 527; Dec. Dig. § 214.*]

2. MUNICIPAL CORPORATIONS (§ 834*) — TORTS—FAILURE TO ABATE NUISANCE—STATUTORY DUTY.

Under Buffalo City Charter (Laws 1891, p. 221, c. 105) § 395, providing that the city shall abate all nuisances, and section 405, as amended by Laws 1900, p. 1302, c. 571, providing that the city may enlarge and embank the Buffalo river, and Laws 1906, p. 1439, c. 527, authorizing the city to abate the nuisance occasioned by the periodical overflow of the river, the city is not under the absolute duty to abate the nuisance; but the duty is discretionary, in the sense that it is judicial, and not administrative, and the city is not liable in damages for failure to exercise such discretionary power.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1784; Dec. Dig. § 834.*]

3. MUNICIPAL CORPORATIONS (§ 845*) — FAILURE TO ABATE NUISANCE IN WATER COURSE—LIABILITY—COMPLAINT.

A complaint in an action against the city of Buffalo for damages for the nuisance occasioned by the periodical overflow of the Buffalo river, which alleges resulting damages to land bordering thereon, and that the city has assented to the placing of obstructions in the river which increased the damage, does not state a separate cause of action based on the placing of the obstructions in the river, made lawful structures by the city charter; but the allegation refers simply to additional damages resulting from the main nuisance alleged, and a demurrer to the complaint cannot be overruled because of the allegations with reference to the placing of the obstructions in the river.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1797; Dec. Dig. § 845.*]

McLennan, P. J., dissenting.

Appeal from Special Term, Erie County.

Action by Emma K. White against the City of Buffalo. From an interlocutory judgment overruling a demurrer to the complaint, defendant appeals. Reversed, and demurrer sustained, with leave to plead over.

For opinion at Special Term, see 60 Misc. Rep. 611, 112 N. Y. Supp. 485.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Louis E. Desbecker and John W. Ryan, for appellant.
Carlton W. White, for respondent.

WILLIAMS, J.   The interlocutory judgment should be reversed, and the demurrer sustained, with costs, and with leave to plead over.

The action is brought to recover damages for nuisance.   The de-

fendant demurs to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. It does state that plaintiff owns land along and in the vicinity of Buffalo river, within the city; that the city is a municipal corporation, and the river is a navigable stream and public highway, and that the city owns the fee of the bed of the river; that the river periodically overflows and floods the lands bordering on and adjacent thereto, causing damage to plaintiff, and that such overflow constitutes a public nuisance; that the city has assented to the placing of obstructions in the bed of the river, which increase the damage caused by the nuisance; that the nuisance can be abated at reasonable cost and expense; that the city refuses to abate it, and has decided that it will not do so. These allegations so far are of fact purely, and must be deemed admitted for the purposes of the demurrer. The other allegations may be said to be conclusions, viz., that it is the duty of the city to abate the nuisance, and that it has full power to do so. These are not necessarily admitted. They are really to be determined from an examination of the charter and various acts of the Legislature, and then, upon the facts so admitted and found, the question arises whether the cause of action is established.

First. As to the duty and power of the city to abate the nuisance.

The power to do so seems to be clearly given by section 405 of the charter (chapter 105, p. 223, Laws of 1891, as amended by section 1, c. 571, p. 1302, Laws of 1900), which provides that the city may make such improvements in the river, in its surroundings, as would apparently abate the nuisance complained of, and provides for the defraying of the expense thereof; and such power to improve was also given by chapter 527, p. 1439, Laws of 1906, which declared the periodical overflow of the river, and the flooding of lands bordering or adjacent to the same, to be a public nuisance, and authorized the city to abate the same, by the means and in the manner therein pointed out. In neither section 405 of the charter nor the act of 1906, was it expressly declared to be the duty of the city to make the improvements necessary to abate the nuisance referred to; nor was the city in either act directed to make the improvement and abate the nuisance.

It is provided by section 395 of the charter that the city shall abate all nuisances; but it will hardly be claimed that this section covers and includes the nuisance in Buffalo river, which could only be abated by the making of extensive improvements therein, and which was made the subject of section 405, following section 395. The intention evidently was to make this river, and the improvement thereof, so as to abate the nuisance therein, the subject of separate and special provisions; and it will be noticed that these provisions, when framed, carefully avoided making the improvements mandatory. They merely gave the city the power to make the same. The act of 1906 showed the extent of the undertaking to so improve the river as to abate this nuisance. It contemplated the expenditure of $1,500,000, and the necessity of acquiring additional lands and the straightening of the channel of the river. Such improvements as these could not have been intended to be covered by the requirement of section 395 of the charter that the city should abate all nuisances.

It is fair to conclude that the intention indicated in the charter and the act of 1906 was that constructive work of the character, extent, and cost contemplated should rest rather in the discretion of the city than the mandate of the Legislature. If this improvement was designed to be mandatory, the word "shall" or "must" could easily have been used in place of the word "may," and the matter thus placed beyond doubt. It seems to me the duty to so improve the river as to abate the nuisance complained of was not absolute, but discretionary; that it required the exercise by the city of judgment and discretion, and was in that sense judicial in its nature, and not administrative.

Second. For the failure of the city to exercise this discretionary power, of a judicial nature, to improve the river, and abate the nuisance, it is not liable in this action for damages. O'Donnell v. City of Syracuse, 184 N. Y. 1, 76 N. E. 738, 3 L. R. A. (N. S.) 1053, 112 Am. St. Rep. 558. There seems to be no doubt as to the principle of law. The difficulty here is as to the facts. The trial court says of the O'Donnell Case:

"No absolute duty to prevent floods from injuring plaintiff's lands was alleged or proved [there], and it was held that no liability was cast upon the city for failure to exercise discretionary power. Plaintiff here alleged a positive, absolute, and imperative duty to abate nuisances, imposed by law upon the defendant by its charter, and that by chapter 527, p. 1439, of the Laws of 1906, the periodical overflow of said river and the flooding of said lands is declared to be a public nuisance. * * * City Charter, § 395, provides that the city shall * * * abate all nuisances."

It will be seen, therefore, that our disagreement is as to the allegation in the complaint of the defendant's duty. Upon our construction of the allegation, read in connection with the charter and the act of 1906, the action cannot be maintained under the doctrine of the O'Donnell Case.

Third. There are some allegations in the complaint with reference to placing obstructions in the river bed for the construction of railroad bridges; but I do not think they constitute a separate cause of action. They are simply of additional damages, resulting from the main nuisance alleged. City Charter, § 404, provides that these bridges are lawful structures.

We cannot overrule the demurrer upon this ground alone. The complaint should stand or fall upon the main proposition passed upon herein. All concur, except McLENNAN, P. J., who dissents.